IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

CAPITAL ONE FINANCIAL )
CORPORATION, )
)
)
Plaintiff, )
)
v. ) Civil Action No. 1:23-cv-861 AJT/IDD
)
)
VELOCITY-BLACK.COM, *et al.*, )
)
)
)
Defendants. )
_____ )

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff Capital One Financial Corporation's ("Plaintiff" or "Capital One") Motion for Default Judgment against Defendants VELOCITY-BLACK.COM, VELOCITYBLACKCLUB.COM, VELOCITYBLACKCLUB.ORG, VELOCITY-BLACKS.COM, VELOCITYBLACKSCLUB.COM, THEVELOCITYBLACK.ORG, THEVELOCITYBLACKCLUB.COM, THEVELOCITYBLACKCLUB.ORG, THEVELOCITYBLACK-APP.COM, TRAVELOCITYBLACKCLUB.COM, and TRAVELOCITY-BLACKAPP.COM (collectively, "Domain Names,") and John Doe a/k/a Erna Tarisa ("John Doe") (collectively with the Domain Names, "Defendants"). Dkt. No. 26. After the Defendants failed to file an answer, plead, or otherwise defend this action, the undersigned Magistrate Judge took this matter under advisement to issue this Report and Recommendation. Upon consideration of the Complaint, Plaintiff's Motion for Default Judgment, the supporting

memorandum, and relevant portions of the underlying record, the undersigned Magistrate Judge makes the following findings and recommends that Plaintiff's Motion be **GRANTED.**

## I. <u>INTRODUCTION</u>

On June 30, 2023, Plaintiff filed its complaint for *in rem* relief against Defendant VELOCITY-BLACK.COM. Dkt. No. 1. On July 17, 2023, Plaintiff filed its First Amended Complaint to add VELOCITYBLACKCLUB.COM as a Defendant. Dkt. No. 9. On September 14, 2023, Plaintiff filed its Second Amended Complaint ("SAC"), which added the remaining Domain Names and John Doe as Defendants. Dkt. No. 22. In the SAC, Plaintiff brings the following claims: (I) Violation of the Federal Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), as to the Domain Names; (II) *In Personam* Trademark Infringement against John Doe; and (III) Trademark Counterfeiting against John Doe. *Id.* Plaintiff presently seeks Default Judgement as to Counts I-III. Am. Mem. in Supp. of Pl.'s Mot. for Default J (hereinafter "Pl's Mem."). The relief Plaintiff requests consists of changing the registrar of record for the Domain Names, injunctive relief, and maximum statutory damages against John Doe. *Id.* at 24-29.

### A. Jurisdiction and Venue

For a court to render a default judgment against a party, it must have (1) subject matter jurisdiction, (2) personal or *in rem* jurisdiction, and (3) be the appropriate venue for the action.

This Court has subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1331, because this case involves a federal question arising under the ACPA (15 U.S.C. § 1121(a)).

This court has *in rem* jurisdiction over the Domain Names, pursuant to 15 U.S.C. § 1125(d)(2)(A), which permits the owner of a mark to file an *in rem* action against a domain name in the judicial district in which the domain name registrar is located, if two elements are met. The domain name registries, Verisign, Inc. and Public Interest Registry, are located within this judicial

district. SAC ¶ 25. The first element required for an *in rem* action over a domain name is that the domain name(s) must violate a plaintiff's trademark rights. *See* 15 U.S.C. § 1125(d)(2)(A)(i). Plaintiff's Complaint alleges that Plaintiff is the rightful owner of the Domain Name marks and that Defendants use of the Domain Names infringes on its marks. SAC ¶¶ 30-45. Therefore the first element is satisfied.

As to the second element required for *in rem* jurisdiction over the Defendant Domain Names, the court must find that the trademark owner: (1) is unable to obtain *in personam* jurisdiction over a person liable for the infringement, or (2) through due diligence is unable to find a person liable for the infringement. *See* 15 U.S.C. § 1125(d)(2)(A)(ii). Due diligence requires that the plaintiff: (aa) send a notice of the alleged violation and intent to sue to the registrant of the domain name at the postal and e-mail address provided by the registrant and (bb) publish a notice of the action as the court may direct. *Id*.

Here, the undersigned finds that Plaintiff has sufficiently alleged that she is unable to obtain personal jurisdiction because the registrant of the Defendant Domain Names has taken affirmative steps to conceal their information by providing false contact information, including false addresses and names of famous actors. SAC ¶ 20; Pl's Mem. at 9. The WhoIs records obtained by Plaintiff indicate that the registrant of the Defendant Domain Names resides in China, or otherwise outside the U.S., in which case, the registrant would not be subject to *in personam* jurisdiction anywhere in the United States. SAC ¶ 20; Pl's Mem. at 9.

Further, Plaintiff has complied with 15 U.S.C. § 1125(d)(2)(A)(ii), subsections (aa) and (bb). On June 30, August 4, and September 8, 2023, Plaintiff sent notice of its intent to proceed *in rem* against the Defendant Domain Names, including a copy of the complaint and the subsequent amendments thereto. Dkt. No. 19-1. Plaintiff sent the notice using the email addresses and first-

class mail to the physical addresses, provided by the Defendants, which Domain Name registrants made available to the public in registration records. *Id.* Plaintiff filed its Motion for Order to Publish Notice of Action on September 15, 2023. Dkt. No. 18. The Court granted the motion on September 18, 2023, and ordered Plaintiff to publish a copy of the Order in *The Washington Times* or *The Washington Post*, once, within twenty-one (21) days of the Order. Dkt. No. 21. On September 20, 2023, Plaintiff published a copy of the Order in *The Washington Times*. Dkt. No. 23. Accordingly, the undersigned finds that Plaintiff satisfied its due diligence requirements pursuant to 15 U.S.C. § 1125(d)(2)(A)(ii).

Because both John Doe and the registrant for the Defendant Domain Names have taken steps to conceal their identity, Plaintiff is unable to determine whether John Doe is the registrant, or a licensee thereof, as would be required to be a Defendant to an ACPA claim, pursuant to 15 U.S.C. § 1125(d)(1)(D), or if John Doe is instead acting in concert with the domain registrant. Pl's Mem.at 10. However, this Court does have *in personam* jurisdiction over Defendant John Doe. Virginia's long-arm statute "extends the jurisdiction of its courts as far as federal due process permits." *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 176 (4th Cir. 2002). The Fourth Circuit applies the sliding scale approach, from *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997), to determine the due process requirements for nonresident defendants engaged in Internet conduct. *ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*, 293 F. 3d 707, 713 (4th Cir. 2002). The Fourth Circuit held that the due process requirements for a nonresident defendant are met when that defendant "(1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *Id.* at 714. The Fourth Circuit draws a distinction between passive Internet activity, wherein

someone simply places information on the Internet, and "directing electronic activity into the State with the manifested intent of engaging business or other interactions in the State." *Id.*

In the present case, the undersigned finds that John Doe's conduct meets the due process requirements in *ALS Scan*. The websites associated with John Doe are "highly interactive" and actively solicited funds, login credentials, and other sensitive information from consumers, including consumers in this District. SAC ¶¶ 23, 46-61; Pl's Mem. at 10. John Doe actively recruited consumers to these interactive websites through social media. SAC ¶¶ 46-61. Pl's Mem. at 10. Accordingly, John Doe has sufficient minimum contacts with the commonwealth because John Doe directed electronic activity to the Commonwealth of Virginia, with the intention of interacting with and soliciting information and funds from consumers, such that a person in the Commonwealth would have a potential cause of action. *See ALS Scan, Inc.*, 293 F. 3d 707 at 714. Therefore, this Court's exercise of personal jurisdiction is proper.

Venue also is proper in this district under 15 U.S.C. § 1125(d)(2)(C). For an *in rem* action, the domain name "shall be deemed to have its situs" in the judicial district where the "registrar, registry, or other domain name authority" is located. 15 U.S.C. § 1125(d)(2)(C).  Here, the principal places of business of the domain name registries, Verisign, Inc. and Public Interest Registry, are located in this district. SAC ¶ 25.

### B.  Service of Process

The Court must be satisfied that the defaulting party has been properly served. Federal Rule of Civil Procedure ("FRCP") 4(n)(1) provides that "the court may assert service over property if authorized by a federal statute" and "notice to claimants of the property is given as provided in the statute or by serving a summons under this rule." In this case, 15 U.S.C. § 1125(d)(2)(B) states that satisfying the due diligence requirements outlined in § 1125(d)(2)(A)(ii) shall constitute

service of process. Because the Plaintiff has fulfilled the due diligence requirements outlined above, the undersigned recommends finding that service of process has been proper as to the Defendant Domain Names.

The undersigned also finds that service on John Doe was proper. Pursuant to FRCP 4(f)(3), an individual in a foreign country may be served "by other means not prohibited by international agreement, as the court orders." In Plaintiff's Motion for Order to Publish Notice of Action, Plaintiff requested that it be permitted to serve John Doe through concurrent service via electronic means and publication. Dkt. No. 18. Service pursuant to Rule 4(f)(3) must comply with constitutional due process requirements, meaning the method of service must be "'reasonably calculated' to give notice to defendant." Plaintiff, despite due diligence, was not able to identify a valid physical address for John Doe. *See* SAC ¶¶ 46-62; Dkt. No. 19. Plaintiff proposed service through the identified phone numbers and messaging applications, which John Doe used to contact consumers. *See* SAC ¶¶ 46-62; Dkt. No. 19. Plaintiff also proposed service through the email addresses in the registration records for the Domain Names, where the registrant is at least associated with John Doe, but is possibly the same individual. *See* Dkt. No. 19. Finding that the proposed methods of service were reasonably calculated to give notice to John Doe, therefore meeting the due process requirement, and that no applicable international agreement prohibited such service, the Court granted the request on September 18, 2023. Dkt. No. 21. Since Plaintiff served John Doe consistent with its proposal in its Motion and in the subsequent Order, the undersigned finds that service on John Doe was proper. *See* Dkt. Nos. 21, 23.

### C. Grounds for Default Judgment

Plaintiff filed its Complaint on June 30, 2023. Dkt. No. 1. After learning of additional Defendants and Domain Names, Plaintiff filed its First Amended Complaint on July 17, 2023, and

its Second Amended Complaint on September 14, 2023. Dkt. Nos. 9, 22. Plaintiff then filed its

Motion for Order to Publish Notice of Action on September 15, 2023. Dkt. No. 18. The Court

granted the motion, on September 20, 2023, Plaintiff published a copy of the Order in *The*

*Washington Times*. Dkt. No. 23.

Plaintiff filed a Request for Clerk's Entry of Default on October 12, 2023, and the Clerk

of the Court entered default on October 18, 2023. Dkt. Nos. 24-25. On October 20, 2023, Plaintiff

filed its Motion for Default Judgment and accompanying memorandum in support of its motion.

Dkt. Nos. 26-27. On October 30, 2023, Plaintiff filed an Amended Memorandum in Support of

Plaintiff's Motion for Default Judgment to comply with the page limit in Local Rule 7(F)(3). On

November 3, 2023, a hearing on the Motion for Default Judgment was held before the undersigned.

Dkt. No. 30. After Defendant failed to respond to the complaint or the Motion for Default

Judgement, and failed to appear at the hearing, or otherwise defend this matter, the undersigned

Magistrate Judge took this matter under advisement to issue this Report and Recommendation. *Id.*

## II. <u>EVALUATION OF PLAINTIFF'S COMPLAINT</u>

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of default judgment

when "a party against whom a judgment for affirmative relief is sought has failed to plead or

otherwise defend." A defendant in default concedes the factual allegations of the complaint. *See,*

*e.g.*, *DIRECTV, Inc. v. Rawlins*, 523 F.3d 318, 322 n.2 (4th Cir. 2008); *Partington v. Am. Int'l*

*Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006); *Ryan v. Homecomings Fin. Network*,

253 F.3d 778, 780 (4th Cir. 2001). Default does not, however, constitute an admission of the

adversary's conclusions of law and is not to be "treated as an absolute confession by the defendant

of his liability and of the plaintiff's right to recover." *Ryan*, 253 F.3d at 780 (quoting *Nishimatsu*

*Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Instead, the Court

must "determine whether the well-pleaded allegations in [the plaintiff's] complaint support the relief sought in [the] action." *Id.*

Thus, in issuing this Report and Recommendation, the undersigned Magistrate Judge must evaluate Plaintiff's claims against the standards of Rule 12(b)(6) of the FRCP to ensure that the Complaint contains plausible claims upon which relief may be granted. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining the analysis for examining a plaintiff's claims under a 12(b)(6) motion to dismiss). To meet this standard, a complaint must set forth "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining whether allegations are plausible, the reviewing court may draw on context, judicial experience, and common sense. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citing *Iqbal*, 556 U.S. at 679).

### III. <u>FACTUAL FINDINGS AND ANALYSIS</u>

#### Count One: Violation of the ACPA

To establish an ACPA violation, a plaintiff is required to show that (1) the plaintiff owns the protected mark, (2) the registrant(s) had a bad faith intent to profit from using the domain names, and (3) the domain names are identical or confusingly similar to, or dilutive of, the distinctive marks owned by plaintiff. *See* 15 U.S.C. § 1125(d)(1)(A); s*ee also People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 367 (4th Cir. 2001). For the reasons set forth below, the undersigned finds that Plaintiff has established a violation of the ACPA.

#### *1. Plaintiff Possesses a Valid and Protectable Mark.*

A necessary predicate to an ACPA action is that a plaintiff has a protectable interest in a trademark. *See* 15 U.S.C. § 1125(d)(1)(A).  A plaintiff's registration with the United Sates Patent

and Trademark Office ("USPTO") is *prima facie* evidence of ownership of the mark and of the exclusive right to use the registered mark in commerce. *See* 15 U.S.C. § 1057(b).

The undersigned finds that Plaintiff has a protectable interest in the VELOCITY BLACK marks. Velocity Mobile Limited ("VML"), which Capital One acquired in 2023, used the VELOCITY BLACK mark in its offering of digital concierge services since as early as 2017. SAC ¶¶ 30, 37. VML registered the domain VELOCITY.BLACK on November 8, 2016. *Id.* ¶ 34. On March 2, 2022, VML applied to register the VELOCITY BLACK mark with the U.S. Patent and Trademark Office by filing applications for the VELOCITY BLACK standard character mark and a particular stylization of the mark. *Id.* ¶ 33, 36. Both applications matured into registrations on May 2, 2023. *Id.*; Dkt. No. 22-12; VELOCITY BLACK, Registration No. 7040761; V VELOCITY BLACK, Registration No. 7040764. In acquiring VML in 2023, Capital One acquired all trademark rights and associated goodwill in the VELOCITY BLACK mark. SAC ¶ 37. Since acquiring VML, Capital One has continued using the VELOCITY BLACK mark to continue offering VML's digital concierge services. SAC ¶ 38. Moreover, Capital One's protectable interest in the Marks predates the registration of each of the Domain Names, the first of which was registered on May 20, 2023. *See* Dkt. No. 1-1; SAC ¶¶ 6-16. Accordingly, the undersigned finds that Capital One has a protectable interest in the Marks because of its ownership and use of the trademarks.

### 2. Defendants Acted in Bad Faith with Intent to Profit from Using the Defendant Domain Names

To establish an ACPA violation, plaintiff is required to prove that the registrant(s) had a bad faith intent to profit from using the defendant domain names. 15 U.S.C. § 1125(d)(1)(A); *see People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 367 (4th Cir. 2001). In

determining whether a defendant acted in bad faith, a court may consider several factors, including, but not limited to:

> (I) the trademark or other intellectual property rights of the person, if any, in the domain name;

> (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

> (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

> (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

> (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

> (VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

> (VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

> (VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

> (IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c)(1) of this section.

15 U.S.C. § 1125(d)(1)(B)(i); *see People for Ethical Treatment of Animals*, 263 F.3d at 368–69. Courts need not address all nine factors and only need to discuss the factors relevant to the "unique circumstances of th[e] case." *Volvo Trademark Holding AB v. Volvospares.com*, 703 F.Supp.2d 563, 567 (E.D.Va.2010); *see Virtual Works, Inc. v. Volkswagen of Am., Inc.*, 238 F.3d 264, 268 (4th Cir.2001).

The undersigned finds that Plaintiff has established that registrant(s) possessed the requisite bad faith intent to profit from Defendant Domain Names. Under the facts and circumstances of this case, the undersigned finds factors V, VII, and VIII—intent to divert consumers, false and misleading contact information, and acquisition of identical or confusingly similar domain names, respectively—particularly relevant in determining whether Defendants acted in bad faith.

There is no indication that Defendants had any intellectual property rights in the Domain Names, nor that Defendants ever used the Domain Names in connection with the bona fide offering of goods and services, pursuant to factors I and III. *See id.*; SAC ¶¶ 46-60. Rather, Plaintiff demonstrates, pursuant to factor V, that Defendants had the intent to divert customers from Capital One's legitimate VELOCITY.BLACK site, such that it would cause harm to the goodwill represented by the marks and for Defendants' own commercial gain. SAC ¶¶ 45-63. Each of the Domain Names include the words "VELOCITY BLACK" and the respective websites each use the particular stylized mark, which Plaintiff registered with the USPTO. SAC ¶ 45; *see* V VELOCITY BLACK, Registration No. 7040764. Each of the sites also directly copies the design, text, images, and video from the legitimate VELOCITY.BLACK site and purports to offer the same online concierge services as those offered by Plaintiff. SAC ¶ 45. Further, John Doe used Facebook, WhatsApp, Instagram, and Telegram to recruit individuals to participate in a work-from-home scam, in which the individuals were asked to rank travel destinations after paying a fee

that the individuals were told would later be refunded, in addition to promised earnings. SAC ¶¶ 46-62. In fact, the individuals were not paid any earnings, nor were their fees refunded. *Id.* Therefore, the Domain Names were used to divert consumers from Plaintiff's legitimate VELOCITY.BLACK site for Defendants' commercial gain. *See* 15 U.S.C. § 1125(d)(1)(B)(V).

The registration records for each of the Domain Names further support a finding of Defendants' bad faith, pursuant to factor VII. The registration records reveal that where a name was used in the registration of the Domain Names, the names coincided with famous actors in China, while other registration records did not contain a name. SAC ¶¶ 6-16; Pl's Mem. at 9. Where addresses were provided, the addresses were either not real locations or coincided with addresses in China which are unlikely to be residential, including a travel agency and a temple. *See* Dkt. 19-1 ¶¶ 4-12; Pl's Mem. at 9. Accordingly, the registration records demonstrate that for each of the Domain Names, Defendants provided materially misleading contact information or intentionally failed to maintain accurate contact information. *See* 15 U.S.C. § 1125(d)(1)(B)(VII).

Turning to factor VIII, each of the Domain Names are confusingly similar to Plaintiff's marks, because they each contain the words "VELOCITY BLACK." SAC ¶¶ 6-16. Defendants have continued registering new Domain Names since Capital One filed its first Complaint on June 30, 2023, and after Capital One disabled some of the earlier Domain Names, resulting in the eleven Domain Names named in the SAC. *Id.*; Pl's Mem. at 4-5. The registration records reveal that the same individual registered all of the Domain Names. Pl's Mem. at 4-5. The registration of eleven Domain Names that are confusingly similar to Plaintiff's marks supports a finding of bad faith.

### 3. The Domain Names are Confusingly Similar or Identical to the Distinctive Marks

The undersigned finds that Plaintiff has sufficiently demonstrated that the Defendant Domain Names are confusingly similar to Plaintiff's Marks. 15 U.S.C. § 1125(d)(a)(A)(ii); *See*

*Also People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 367 (4th Cir. 2001). "In assessing whether a mark is confusingly similar, the alleged infringing domain name does not need to be identical to the registered mark. Rather, the 'dominant or salient portions' of the domain name must be sufficiently similar." *Volvo Trademark Holding AB v. Volvospares.com*, 703 F. Supp. 2d 563, 568 (E.D. Va. 2010) (citing *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.,* 43 F.3d 922, 936 (4th Cir. 1995)).

Here, Plaintiff's Marks were completely duplicated in each of the Domain Names, with some additions of generic words such as "club" or "app." SAC ¶¶ 6-16. However, the dominant portions of each of the Domain Names are the words "VELOCITY BLACK." SAC ¶¶ 6-16. Further, Plaintiff has been contacted by consumers expressing confusion about the Domain Names. SAC ¶ 57. Therefore, Plaintiff has satisfied this element. *See Agri-Supply Company, Inc. v. Agrisupply.Com*, 457 F. Supp. 2d 660, 663 (E.D. Va. Sept. 13, 2006) (holding the domain name was confusing similar because it was "virtually identical" to plaintiff's trademark).

### Count Two: Trademark Infringement

To establish a claim for Trademark Infringement, pursuant to the Lanham Act, 15 U.S.C. § 1114(1), a plaintiff must meet the following elements: (1) that it owns a valid mark; (2) that the defendant used the mark in commerce without plaintiff's authorization; (3) that the defendant used the mark, or an imitation of the mark, "in connection with the sale, offering for sale, distribution, or advertising" of goods or services; and (4) that defendant's use of the mark is likely to confuse consumers. *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 152 (4th Cir. 2012).

First, Capital One has established that it possesses valid trademark rights in VELOCITY BLACK, pursuant to its registered trademarks: VELOCITY BLACK, Registration No. 7040761; V VELOCITY BLACK, Registration No. 7040764. Dkt. No. 22-12; SAC ¶¶ 36-37. Plaintiff also

did not give John Doe authorization to use the VELOCITY BLACK marks. Each of the Domain Names include the words "VELOCITY BLACK," and each of the respective websites prominently features the VELOCITY BLACK marks, including using the registered stylized mark. SAC ¶ 45; *See* Dkt. No. 22-12; V VELOCITY BLACK, Registration No. 7040764. John Doe, using social media advertising and messaging applications, recruited consumers to the Domain Names, while claiming to be associated with VELOCITY BLACK. SAC ¶¶ 45-63. Plaintiff never authorized any of these uses of the VELOCITY BLACK marks. *Id.* The third element also is met because John Doe recruited consumers to the Domain Names while purporting to offer the same online concierge services offered by the legitimate VELOCITY.BLACK website. *Id.* John Doe also induced the consumers to pay a fee to participate in the work-from-home scam. *Id.* Therefore, John Doe used the VELOCITY BLACK marks in connection with the offering and advertising of online concierge services. Accordingly, the undersigned finds that Plaintiff has met the first three elements.

Finally, John Doe's use of the VELOCITY BLACK marks is likely to, and did, cause confusion to consumers. *See id.* The Fourth Circuit uses the following factors to assess a likelihood of confusion: "(1) the strength of distinctiveness of the plaintiff's mark as actually used in the marketplace; (2) the similarity of the two marks to consumers; (3) the similarity of the goods and services that the marks identify; (4) the similarity of the facilities used by the markholders; (5) the similarity of advertising used by the markholders; (6) the defendant's intent; (7) actual confusion; (8) the quality of the defendant's product; and (9) the sophistication of the consuming public." *George & Co., LLC v. Imagination Ent. Ltd.*, 575 F.3d 383, 393 (4th Cir. 2009). Not all of the factors will be relevant, but the factor which is "often paramount" is actual confusion. *Id.*

Based on the above factors, and because of the actual confusion among consumers, the undersigned finds that John Doe's use of the VELOCITY BLACK marks is likely to confuse

consumers. The Domain Names all contain VELOCITY BLACK marks identical to those held by Plaintiff, and the Defendants purport to offer the same online concierge services. *See* SAC ¶ 45. Additionally, the Domain Names' websites copy the same text, images, video, and website design as the legitimate VELOCITY.BLACK website. *Id.* John Doe used the VELOCITY BLACK marks and Domain Names to perpetrate a work-from-home scam, soliciting funds and sensitive information from consumers, which demonstrates John Doe's bad faith intent. SAC ¶¶ 46-62. Finally, Capital One received "numerous contacts" from consumers expressing confusion about the Domain Names. SAC ¶ 57. Indeed, John Doe, using the Domain Names, defrauded multiple individuals into giving funds or sensitive information, believing they were legitimately affiliated with Plaintiff. SAC ¶¶ 46-62. Accordingly, John Doe's use of the VELOCITY BLACK marks is likely to, and in fact did, cause consumer confusion. Accordingly, the undersigned recommends finding that John Doe infringed on Plaintiff's VELOCITY BLACK marks.

### Count Three: Trademark Counterfeiting

To establish a trademark counterfeiting claim, pursuant to 15 U.S.C. § 1114(1), a plaintiff must show "that the defendant (1) intentionally used a counterfeit mark in commerce; (2) knowing that the mark was counterfeit; (3) in connection with the sale, offering for sale, or distribution of goods, and (4) its use was likely to confuse or deceive." *Match.com, LLC v. Fiesta Catering Int'l, Inc.*, 2013 U.S. Dist. LEXIS 14099, at \*20 (E.D. Va. Jan. 31, 2013). A "counterfeit mark" is defined as "'a spurious mark which is identical with, or substantially indistinguishable from' the plaintiff's mark." 15 U.S.C. § 1127.

In the present case, Plaintiff has demonstrated that John Doe's use of the VELOCITY BLACK marks was identical to Plaintiff's use of the marks on the legitimate VELOCITY.BLACK site. SAC ¶ 45. John Doe used the marks to purport to offer the same online concierge services as

those offered by Plaintiff. *Id.* In doing so, John Doe directed consumers to the Domain Names, which directly copied the legitimate VELOCITY.BLACK's text, images, video, and website design. SAC ¶¶ 45-62. Therefore, John Doe intentionally used the counterfeit VELOCITY BLACK marks, knowing that the marks were counterfeit to Plaintiff's, in the connection with offering online concierge services, and thus satisfying the first three elements for trademark counterfeiting. *Id.*; *see Match.com*, 2013 U.S. Dist. LEXIS 14099, at *20. Finally, as discussed more fully in the analysis to Count II, John Doe's use of the marks was likely to, and in fact did, cause consumer confusion, and multiple individuals were deceived into giving funds and sensitive information to John Doe through the Domain Names. SAC ¶¶ 45-62. Accordingly, the undersigned finds that all of the elements for trademark counterfeiting have been satisfied and recommends finding that Defendant John Doe counterfeited Plaintiff's VELOCITY BLACK marks.

### F. Relief

In this *in rem* action, Plaintiff seeks an order directing VeriSign and the Public Interest Registry to change the registrars of record for the Domain Names to Plaintiff's domain name registrar of choice, CSC Corporate Domains Inc., and for that registrar to take all necessary steps to have Capital One listed as the registrant for the Defendant Domain Names. SAC at 28; Mot. for Default. J. Pursuant to 15 U.S.C. § 1125(d)(1)(C), "[i]n any civil action involving the registration, trafficking, or use of a domain name … a court may order … the transfer of the domain name to the owner of the mark." This Court has previously ordered the transfer of domain names where those domain names infringe on valid trademarks. *See Int'l Bancorp, LLC.*, 129 F. Supp. 2d at 490. Given that Plaintiff has established a violation of the APCA, the undersigned recommends granting Plaintiff's requested relief and ordering Verisign and the Public interest Registry to change the registrar of record to CSC Corporate Domains, Inc. CSC Corporate Domains shall then take the

necessary steps to change the registrant of the Domain Names to Capital One.

As to Count II, Plaintiff seeks injunctive relief to prevent ongoing trademark infringement. SAC at 27; Mot. for Default J. To obtain a permanent injunction to prevent trademark infringement, pursuant to the Lanham Act, 15 U.S.C. § 1116(a), the Fourth Circuit requires a Plaintiff to show the following: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *See Christopher Phelps & Associates LLC v. Galloway*, 492 F.3d 532, 543 (4th Cir. 2007).

As to the first element, the Fourth Circuit "recognize[s] that irreparable injury regularly follows from trademark infringement." *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 939 (4th Cir. 1995). Capital One has demonstrated irreparable harm to the value and goodwill associated with the VELOCITY BLACK marks from John Doe's use of the Domain Names. Pl.'s Mem. at 26. Plaintiff also shows that monetary damages are an inadequate remedy because of the continued threat of infringement, as demonstrated by John Doe's continued registration of additional Domain Names as recently as August 31, 2023. *Id.*; SAC ¶¶ 6-16. Further, John Doe's failure to appear in this matter suggests that they are unlikely to cooperate in future suits for money damages. *See Hilton Worldwide, Inc. v. Global Advertising, Inc.*, 2016 U.S. Dist LEXIS 189528 at *23-24 (E.D. Va. April 8, 2016). Turning to the third element, the balance of equities favors a permanent injunction to prevent John Doe from continuing to use the VELOCITY BLACK marks without authorization because the only hardship that would suffer is "an obligation to follow trademark law." *See id*; Pl's Mem. at 26. Finally, the fourth element is met because a preliminary injunction would serve the public interest by preventing the ongoing consumer

confusion and fraud by John Doe. Pl's Mem. at 26-27; *see* SAC ¶¶ 45-63.

Accordingly, the undersigned recommends granting Plaintiff's requested preliminary injunction, which consists of the following proposed terms:

a. that John Doe and all those in active concert or participation with them be jointly and severally enjoined from using any copy or colorable imitation of Capital One's VELOCITY BLACK mark, including as reflected in U.S. Trademark Registration Nos. 7040761 and 7040764, in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, printing, importation, production, circulation, or distribution of any product or service, in such fashion as to relate or connect such product or service in any way to Capital One, or to any goods or services sold, manufactured, sponsored, approved by, or connected with Capital One; and

b. that John Doe and all those in active concert or participation with them be jointly and severally enjoined from engaging in any other activity constituting an infringement of Capital One's VELOCITY BLACK mark, or constituting any damage to Capital One's name, reputation, or goodwill; and

c. that any person or entity in active concert or participation with John Doe a/k/a Erna Tarisa and with notice of the injunction, including any Internet search engines, web hosting and Internet service providers, domain name registrars, domain name registries, email service providers, social media network operators, messaging application operators, and payment processors, cease facilitating registration or use of domain names, websites, or accounts incorporating the VELOCITY BLACK mark or marks confusingly similar thereto, and cease hosting, use, or facilitating access to, any domain names, websites, accounts, and services through which John Doe a/k/a Erna Tarisa engages in use of the

VELOCITY BLACK mark or marks confusingly similar thereto, including without limitation, placing all such domain names on "serverhold" status, "clienthold" status, or such other status that renders the domains inoperable

Dkt. No. 26-1.

As to Count III, Plaintiff seeks the maximum statutory damages for trademark counterfeiting. Pl's Mem. at 27; SAC at 28. In a case involving the use of a counterfeit mark, in connection with the sale, offering for sale, or distribution of goods or services, and where the use of the counterfeit mark is willful, the court may award statutory damages up to $2,000,000 per counterfeit mark per type of goods or services sold or offered for sale, as the court considers just. 15 U.S.C. § 1117(c)(2). The use of a counterfeit mark "is willful if a defendant has knowledge that its conduct represented infringement or recklessly disregarded that possibility." *Mya Saray, LLC v. Al-Amir, Inc.*, 831 F. Supp. 2d 922, 941 (E.D. Va. 2011). Here, the undersigned finds that John Doe's use of counterfeit marks was willful. Plaintiff has demonstrated that John Doe used the counterfeit VELOCITY BLACK marks to defraud consumers into giving sensitive information and funds to John Doe, while John Doe purported to offer the same services as those Plaintiff offered on the legitimate VELOCITY.BLACK site. SAC ¶¶ 45-63. District courts often award the maximum statutory damages in trademark counterfeiting cases, specifically "those whose marketplace is the internet" to deter others engaged in similar conduct. *See Fox News Network v. Doe*, 2021 U.S. Dist. LEXIS 217092, at *18 (E.D. Va. Jan. 27, 2021), *adopted by* 2021 U.S. Dist. LEXIS 217091 (E.D. Va. Feb. 11, 2021). Because of John Doe's use of the marks to intentionally deceive and defraud consumers on the internet, and to deter others from engaging in similar conduct, the undersigned recommends an award of the maximum statutory damages, $2,000,000.

Finally, Plaintiff seeks an award of pre- and post-judgment interest on the above statutory

damages. *See* Pl's Mem. at 28; Dkt. No. 26-1. Pursuant to 28 U.S.C. § 1961(a), "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." Accordingly, the undersigned recommends that pre- and post-judgment interest be applied to the statutory damages.

## IV. RECOMMENDATION

For the reasons stated above, the undersigned Magistrate Judge recommends entry of default judgment in favor of Plaintiff and against Defendant Domain Names, as to Count I, and against Defendant John Doe, a/k/a Erna Tarisa, as to Counts II and III. The undersigned further recommends (1) that Verisign and the Public Interest Registry be ordered to change the registrar of record for the Domain Names to CSC Corporate Domains, Inc., who shall then change the registrant of the Domain Names to Plaintiff; (2) that John Doe be permanently enjoined from the continued unauthorized use of Plaintiff's trademarks; (3) that an award of the maximum statutory damages, $2,000,000 be entered against John Doe; and (4) that pre- and post-judgment interest be applied to the damages award.

### V. NOTICE

By means of the Court's electronic filing system and by mailing a copy of this Report and Recommendation to defendants at their address for service of process, the parties are notified as follows. Objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of service on you of this Report and Recommendation. A failure to file timely objections to this Report and Recommendation waives appellate review of the substance of the Report and Recommendation and waives appellate review of a judgment based on this Report and Recommendation.

/s/ Ivan D. Davis

January 31, 2024
Alexandria, Virginia

Ivan D. Davis
United States Magistrate Judge